[No. 8865.   Department One.   June 1, 1910.]

THE STATE OF WASHINGTON, *on the Relation of* L. F. McCONIHE, *Plaintiff*, v. R. S. STEINER, *as Judge of the Superior Court for Grant County, Respondent.*[1]

JUDGMENTS—VACATION—COURTS—TERMS. Under the Washington practice, the superior courts having no terms, their judgments have no probationary period in which they are subject to the control of the courts, except under the statutory right to vacation or modification.

JUDGMENTS—VACATION—PERSONS ENTITLED. The superior court has no power, on its own motion or at the instance of a stranger appearing as *amicus curiae*, to vacate a judgment for fraud and collusion, there having been no real controversy between the parties.

JUDGMENTS—CONCLUSIVENESS—PARTIES BOUND. Judgments fixing the rights of the parties to the action in the waters of a lake, although general in form, are binding only upon the parties and their privies.

Application for a writ of prohibition, filed in the supreme court May 12, 1910, to prevent the vacation or modification of a judgment by the superior court for Grant county, Steiner, J.   Writ granted.

*E. W. Husted* and *P. C. Sullivan*, for relator.

*Peacock & Ludden*, for respondent.

FULLERTON, J.—In this proceeding the relator seeks a writ of prohibition against the superior court of Grant county, prohibiting it from proceeding to vacate, modify, or set aside a certain judgment or decree entered in that

[1]Reported in 109 Pac. 57.

court on March 23, 1910, in an action pending therein, wherein C. Victor Martin and William Turner were plaintiffs, and the relator was defendant. The complaint on which the action was tried is not set out in the record, but it can be gathered from what is made to appear that the plaintiffs sued to enjoin the defendant from interfering with their claimed right to divert from Moses lake, in Grant county, water to the extent of 200 inches, miners' measure, under a six-inch pressure, for irrigating, stock and domestic purposes. To the complaint an answer was filed, which put in issue its allegations of superior rights, and by way of an affirmative answer, set up a right in the defendant McConihe to the waters of the lake and to Crab creek, a tributary thereof, to the extent of 4,700 cubic feet per second of time.

The action was brought on for trial on March 23, 1910. On the call of the case the plaintiffs stated to the court the issues making up the controversy between the parties, and then produced witnesses who gave evidence tending to substantiate the allegations of the complaint, or, as the court states in its return, evidence ample, in the absence of a contrary showing, to sustain the plaintiffs' contention. The defendant then proceeded to offer evidence on his own behalf, whereupon the court inquired of their attorney whether he proposed to controvert the case made by the plaintiffs, and was answered to the effect that he did not; that the defendant would have to admit that the plaintiffs' rights in the waters of the lake were superior to their own. The attorney for the plaintiffs then stated that the plaintiffs had no controversy with the defendant except on the question of priority, and if the defendant was willing to admit that the plaintiffs' rights were superior to the defendant to the amount of water claimed by them, he had no objection to a decree in the the defendant's favor, provided it was made subject to the plaintiffs' decree. The court thereupon directed a decree accordingly, no other proofs being taken.

Subsequently two sets of findings and decrees were sub-

mitted for the judge's approval, which, after explanation, were signed by him and filed as decrees and judgments of the court. The material part of the decree in favor of the plaintiffs was as follows:

"(1)   That the plaintiffs are the owners of the first right to divert the waters of Moses Lake in Grant county, State of Washington, to the extent of 200 inches, miners' measure under a six inch pressure, and to use the same for irrigation, stock and domestic purposes.

"(2)   That the claims of the defendants, and each of them, in and to the waters of said lake adverse to the aforesaid rights of the plaintiffs are without foundation, and all the rights of the defendants, or either of them, in and to the waters of said lake are subsequent and inferior to the aforesaid rights of the plaintiffs.

"(3)   That the defendants, and each of them, are hereby forever enjoined from claiming any right, title or interest in or to the waters of said Moses Lake adverse to the right of the plaintiffs to divert and use 200 inches of said water, miners' measure under a six inch pressure, and that the said defendants, and each of them, are hereby forever enjoined from in any wise interfering with the plaintiffs' use and enjoyment of said right.

"(4)   That the plaintiffs have and recover from the defendants their costs and disbursements in this action."

That of the defendant was as follows:

"(1)   That the defendant, L. F. McConihe, is the owner of the right to store water for the purpose of irrigation, stock and domestic uses, in Moses Lake and Crab Creek, in Grant county, Washington, except only as hereinafter stated, to the extent of 1000 cubic feet per second of time.

"(2)   That said defendant L. F. McConihe, is the owner of the right to divert the waters of said Moses Lake, and that part of Crab Creek extending from its source in section 16 twp. 21 N. R. 27 E. W. M., in said county and state, commonly known as the first rise of Crab Creek, to the point where said Crab Creek empties into said Moses Lake, Wash., all in Grant county, Washington, together with all the underground waters lying, flowing and being beneath said Moses Lake and that part of Crab Creek above described, and appurtenant to said lake and creek, except only as hereinafter

stated, to the extent of 4700 cubic feet of water per second of time, and to use the same for irrigation, stock and domestic purposes.

"(3)  The rights to store, divert and use the waters of Moses Lake and Crab Creek above decreed to the said defendant, L. F. McConihe, are subject only to the prior right of C. Victor Martin and William Turner, to the diversion and use of the waters of said Moses Lake for like purposes, to the extent of 200 miners' inches per second of time, under six inch pressure, as adjudged to them under decree of even date herewith."

On April 13, 1910, one James O'Sullivan, an attorney, appeared before the court, and as *amicus curiae* orally moved the court to vacate the decrees, stating as grounds therefor that they were entered by collusion and fraud; that there was no real controversy between the plaintiffs and the defendant, but that the action was begun for the purpose of manufacturing evidence to be used in certain contest proceedings in which the question whether the plaintiffs or the defendant had water rights in Moses lake and Crab creek were material considerations.  The court thereupon ordered that the attorney be permitted to appear as *amicus curiae* to present a motion to vacate the decrees, and directed that the plaintiffs and defendant be cited to appear on a day named and show cause why the decrees should not be vacated.  The parties appeared on the day appointed and objected to the jurisdiction of the court to entertain the proceedings, contending that the court had no power, either on motion of an *amicus curiae* or on its own motion, to vacate a judgment or decree over the protest of the parties in interest or persons adversely affected by the decree.  The court overruled the objection, and was proceeding to hear the application on its merits when this writ was sued out.  The record, therefore, suggests the question of the power of the court, on its own motion or on the motion of a stranger to the record, over the protest of the parties thereto, to inquire whether a judgment entered by it has been collusively and fraudulently obtained, and to vacate and set it aside if it so finds.

It has seemed to us that the court is without such power. In considering the question it must be remembered that judgments under our practice have no probationary period in the sense that they are subject to the control of the court and subject to be set aside, vacated or modified by it on its own motion, as were judgments at common law during the term at which they were rendered or entered of record. Our courts, on the contrary, have no terms. The court has the same power to enter a judgment on one judicial day as it has on another, and its judgments, subject to the power of vacation or modification given by statute, have the same finality when first entered that they have at any time thereafter. In other words, subject to the statutory right of vacation, they have the quality of a common law judgment after term, immediately upon their rendition and entry of record. The power of the court to vacate a judgment under the circumstances shown here must, therefore, be found either in the statute or in the inherent powers possessed by a common law court over its judgment after term.

Turning to the statute we find nothing that permits a court, on its own motion or at the request of a stranger to the record, to exercise the power. By section 235, Rem. & Bal. Code, the court may, on good cause shown, vacate a judgment entered without personal service of summons, and by section 303 it may, in the furtherance of justice, relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect, and by section 464 it may grant relief from a judgment for a number of causes therein defined; but it will be observed that in each of these instances the relief granted must be on application of a party to the record adversely affected by the judgment. It is nowhere even intimated that a stranger to the record or the court, on its own motion, might make the application. Nor do we find that the court has any such inherent power in virtue of the common law. While at common law a court might, either on its own motion or on

the motion of an *amicus curiae* dismiss a pending action, its power ceased on the entry of the judgment therein. The rule is that, after the term has ended, all final judgments and decrees of the court pass beyond its control. These principles are well stated in the case of *In re Burdick*, 162 Ill. 48, 44 N. E. 413, in the following language:

"It is settled law that while a collusive or fraudulent suit is still pending the court will, at the suggestion of either a party to the record, or a person in interest or who may be prejudiced by the judgment, or even at the instance of a stranger who appears as *amicus curiae*, or upon its own motion, dismiss such suit out of court. . . . And the same rule applies where the false and fictitious case is pending in a court of review on appeal or writ of error, and such appeal or writ of error will be dismissed. . . . And the rule that is applicable where both parties collude to get up a case for the opinion of the court is applicable to a case where one of the parties becomes owner of the whole opposing interest and sole party in interest, and is *dominus litis* on both sides.

"We understand the doctrine to be, that the person making application, whether by motion or by bill in chancery, to set aside a judgment after the end of the term in which it was obtained, must either be a party to such judgment or in privity with such party, or be possessed of rights or equities which are directly and injuriously affected by the judgment. There are many cases where the court, at a term subsequent to that at which a judgment or decree was rendered, has interposed to set aside such judgment or decree for either fraud or collusion, but we know of none in which such action has been taken where the party applying for such relief has not been within one or the other of the above mentioned classes of persons. To permit strangers whose rights or interests are not directly and injuriously affected by the judgments or decrees to overturn adjudications to which the parties and those in privity with them make no objections, would encourage litigation and disturb the peace of society."

See, also, *Ward v. Alsup,* 100 Tenn. 619, 46 S. W. 573; *Bronson v. Schulten*, 104 U. S. 410; *Robinson v. Stevens' Adm'r*, 63 Vt. 555, 22 Atl. 80.

In the argument submitted in support of the action of the trial court it seems to be assumed that these decrees fix the rights of the parties to the waters of Moses lake and Crab creek, not only as between themselves, but as to other and third parties claiming interests adverse to such parties. But a moment's reflection must convince any one that this view is erroneous. Although general in form, and broad enough in language to include the whole world, they can have no such effect. They are binding on the parties to the action and their privies, but upon no one else. As to strangers claiming rights in the waters of the lake, the decrees in no manner affect them; the decrees are not even evidence of adverse rights. Strangers may proceed as if the decrees had never been entered.

We conclude, therefore, that the court is without power to interfere with the decrees against the protest of the only parties affected by them or having an interest therein. The alternative writ should be made peremptory, and it is so ordered.

RUDKIN, C. J., CHADWICK, MORRIS, and GOSE, JJ., concur.