The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* HENRY MAIER (No. 3361)[1]

[1] T. D. 44679.

410

United States Court of Customs and Patent Appeals, March 2, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler*, special attorney, of counsel), for the United States.

*Brooks & Brooks* (*Frederick W. Brooks, jr.*, of counsel) for appellee.

[Oral argument February 3, 1931, by Mr. Geisler]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, presiding Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the First Division of the United States Customs Court, in a reappraisement matter under the Tariff Act of 1922. The merchandise involved is certain undyed velvet, of which two entries were made by the appellee at the port of New York. The importer appealed from the appraisement of the local appraiser in each instance. The matters were consolidated and heard by Associate Justice Tilson, who found, on reappraisement, that the cost of production of the merchandise in question was $1.23 per yard. On motion, a rehearing was allowed and further proceedings had, as a result of which the goods were appraised at their cost of production, which was found to be $1.50 per yard. Thereupon both parties appealed for review. The First Division, after review, speaking through Sullivan, Associate Justice, in a comprehensive opinion, found that there was no foreign, export, or United States value of the goods in question, and that the proper dutiable value was the cost of production, which the court found, after examining all the items entering therein, was 7.92 reichsmarks per yard.

A judgment was entered on said finding on January 21, 1930, and on the same day the appellee applied for a rehearing, calling attention to the fact that the coefficient of 1.12 mentioned in the opinion, was "an arbitrary, theoretical factor for determining inland gross selling price, including many items which have nothing to do with cost of production, whereas, on the other hand, the cost of production should be figured exactly in accordance with the statutory provisions." Said petition then asked that the cost of production might

be found to be Swiss francs 7.08 or reichsmarks 5.7348.   This petition for rehearing was overruled on March 27, 1930.

On April 4, 1930, the following order, which it is conceded was entered without notice to either the assistant attorney general or to the appellee, was entered by the First Division:

The attention of the court being called to the fact, by motion for rehearing, that an error was made in the conversion of Swiss francs into German marks, and as it so appears in our opinion, Circular No. 1666, that in converting Swiss francs into German reichsmarks we used as a coefficient 1.12, when we should have used 1.23; we also multiplied the cost per yard of Swiss francs 7.08 instead of dividing said sum by 1.23.

We therefore correct our opinion in this respect and our judgment by finding the cost of production of the merchandise as reichsmarks 5.756 per yard.

Let judgment be entered accordingly.

On the 9th day of May, 1930, the Government made a motion to vacate said order on the grounds that the court had no jurisdiction to make the same, and upon the further ground that no notice was given to the United States of said action, which motion was duly denied by the court.   Thereupon the Government has appealed.

In the assignments of error filed herein the Government questions not only the jurisdiction of the court in making the order complained of, but also assigns error on the finding of value on the record, so that we have before us a general attack upon the judgment of the court below on all points.

The first point which is open for inquiry is the action of the court below in reopening its judgment of January 21, 1930, and making a new finding of dutiable value.   It is said by the court below, and argued by appellee, that the action of the court in this respect amounts to nothing more than a correction of a clerical error, and the familiar principle is invoked that clerical or formal corrections or amendments of a judgment record necessary to make it speak the truth, and not involving any change in the judicial action already taken, may be made at any time before or after the expiration of the term at which such judgment is entered.

In connection with this suggestion it is argued that the United States Customs Court has no terms properly so designated, and is continually in session, so that any necessary order, in any matter, may be entered at any time.   In this connection attention is called by the Government to the fact that rule 3 of the rules of the United States Customs Court provides as follows:

3. TRIAL TERMS.—The trial terms at New York for the trial of all cases arising by protest or claims for allowance or for loss or damage shall be held as follows:

Before the First Division, the week in each month beginning with the first Monday, except July, August, and September, and in September, the week beginning the second Monday,   *   *   *   The hour for calling such calendars shall be 10.30 o'clock in the forenoon.   *   *   *

The First Division shall hear cases involving the remission of additional duties on the second Thursday of each month, except July and August, *and shall hear applications for review on the second Friday of each month, except July and August.* * * * [Italics ours.]

This rule, it is contended, so operates as to put it beyond the jurisdiction of the United States Customs Court to amend its orders after the conclusion of the trial terms mentioned in said rule, in any matter of substance.

If the change made in the final order by the First Division hereinbefore mentioned is the correction simply of a clerical error, then, under the authorities, we are clearly of opinion such correction could be made, even though the trial terms named in said rule 3 might be considered terms, as the expression is generally used in the adjudicated cases. *Bronson* v. *Schulten*, 104 U. S. 410; *In re Wight*, 134 U. S. 136. If, however, the term during which the order was entered has expired, it is the rule in the United States courts, in the absence of a statute providing otherwise, that a court can not set aside or change its final judgments, unless the proceeding for that purpose was begun during such term. *United States* v. *Mayer*, 235 U. S. 55.

An examination of the order and the record discloses quite plainly that the change made was a matter of substance affecting the character of the judgment, and was not the mere correction of a clerical error. The First Division, in its original findings, used a coefficient of 1.12, which the testimony in the record shows was a coefficient used in fixing inland gross selling price of the goods in question. The coefficient which was finally used, namely, 1.23, was simply a mathematical result of dividing the proclaimed value of a German reichsmark 23.82 by the value of a Swiss franc 19.3, and was used for the reduction of the cost of production into the United States dollars, at the proclaimed rate. In other words, the use of the coefficient 1.12, in arriving at the original judgment, was an element in the finding of dutiable value, while the figures 1.23 were used merely in computing the value in United States dollars. Our conclusion is that this was not merely the correction of a clerical error, but was a matter of substance and amounted to a readjudication of one of the issues involved in the case.

At the time this order was entered, the statute, section 518 of the Tariff Act of 1922, provided in part, as follows:

* * * The board of three general appraisers deciding a case or a general appraiser deciding an appeal for a reappraisement may, upon the motion of either party made within thirty days next after such decision, grant a rehearing or retrial of said case when, in the opinion of said board or said general appraiser, the ends of justice so require. * * *

Under this statute the First Division had legal authority to grant a rehearing, if applied for in any time within 30 days next after the judgment of January 21, 1930. Such a rehearing was duly asked

for, and, as we have seen, was denied. The following attempted order of the court of April 4, 1930, was entered more than 30 days after judgment was entered in the case, and at a time when no application for rehearing was pending or had been allowed. The statute has fixed a limitation upon the time within which a rehearing may be applied for, and it seems to follow, as a logical conclusion, that after such period of limitation has expired, and at a time when no petition for rehearing is pending, there is no power in the United States Customs Court to reopen the judgment and readjudicate the subject matter.

The common law of England proceeded upon the theory that so long as the term of court at which an order had been entered was in session, the matter was "in the breast of the court" and the judgment could be vacated or altered. That rule, however, has been held to be inapplicable to courts in which, by law, there are no terms, properly so called. In such courts it has been held, and on that side is the great weight of authority, that if there be provided by the statute a method of revising or vacating said judgment, and a statutory limitation of time has been fixed to initiate such proceeding, after the expiration thereof, control over said judgment, by the court, except to correct clerical errors and the like, has ceased. *Whitbeck* v. *Montana Central Railway Co.*, 21 Mont. 102, 52 P. 1098; *Dedrick* v. *Charrier*, 15 N. D. 515, 108 N. W. 38; *Martinson* v. *Marzolf*, 14 N. D. 301, 103 N. W. 937; *State* v. *Steiner*, 58 Wash. 578, 109 P. 57; *Jacks* v. *Baldez*, 97 Cal. 91, 31 P. 899; *People* v. *Wells*, 255 Ill. 450, 99 N. E. 606; *State* v. *District Court*, 55 Mont. 324, 176 P. 608; *Weaver* v. *Weaver*, 16 N. M. 98, 113 P. 599. If this be the applicable rule, and we think it is, then it is immaterial whether the trial terms fixed by the rules of the United States Customs Court be considered as terms, within the legal meaning usually given to that term or not, provided the statutory time during which a petition for rehearing has elapsed before the attempted correction of the judgment was made.

The remedy of the parties, if any, at that time, was by appeal to this court. Furthermore, if it were conceded that the right to reopen a judgment existed after the statutory time had expired for filing a petition for rehearing, and to readjudicate it or some part of it, this could not be done, in our opinion, without proper notice not only to the importer, but to the representative of the Government as well. We held in *United States* v. *Rothschild & Co.*, 3 Ct. Cust. Appls. 251, T. D. 32566, that the allowance of a rehearing without notice to the Government counsel was a nullity, and that the United States Board of General Appraisers (now the United States Customs Court) proceeding without such notice, did so without authority of law. In so doing, this court called attention to Rule IV of the United States Board of General Appraisers. The substance of that rule is

found in rule 29 of the United States Customs Court, promulgated November 17, 1926, and which is as follows:

Motions for rehearing under section 518 of the act of 1922 must be made in writing and filed with the clerk of the court within 30 days from the date of the entry of judgment in the case in which such rehearing is requested. Such motion must clearly state the grounds or reasons therefor. If the grounds do not appear from the record, the motion must be accompanied by affidavits setting forth in detail the facts upon which the motion is based, and the opposing party may have 10 days after such service in which to file objections thereto. Briefs may accompany such motions. No oral argument shall be heard thereon, except as the court may in its discretion otherwise determine. A copy of said motion for rehearing shall be served upon the collector at the port at which the merchandise was entered and upon the opposite parties in interest or their attorneys of record.

This rule may not be disregarded by the court, and a failure to give notice as provided therein will invalidate an order entered thereunder.

The reappraisement proceedings herein involve the dutiable value of certain transparent velvets in the gray. These are undyed, are made solely for the American trade, and are intended to be dyed and finished after importation. It is shown and admitted that there is no foreign, export or United States value for these velvets. Certain testimony was introduced before Justice Tilson bearing on the question of cost of production. This consisted of the oral testimony of several witnesses called by both parties, an affidavit of Erich Croon, managing director of the exporting company, and eight reports of United States customs attachés, taken at various times on the subject involved here.

The said affidavit of Croon is principally relied upon by counsel for appellee to support the judgment of the court below, it being contended that there is therein substantial evidence to support the court's judgment. In this affidavit, Croon states as to the trade in Germany in the imported article—

* * * in which trade there was formed in 1907 an association including all of the German manufacturers, which association is still in operation, and of which deponent was an officer for some years, and deponent's firm has been a member since its organization; * * *.

He further states:

Deponent further states that the invoiced price to Henry Maier of $1.23 includes the costs of materials and the manufacture thereof into the velvet as of a time preceding the date of this shipment as would ordinarily permit the manufacture of this quality in the usual course of business, and also the usual general expenses or overhead (not less than 10 per centum of the cost of materials and manufacture of such merchandise), and the cost of packing and containers, and an addition for profit of more than 8 per centum of the cost of materials and manufacture, which is the profit ordinarily added by manufacturers in Germany of the same class of merchandise.

In Exhibit 10 of March 11, 1929, customs attaché Clark reported a conference he had had with the exporting company in Krefeld, Germany, and attached to which report as Exhibits A and B are statements furnished by said exporters showing the alleged itemized cost of production of said velvets. In this report, in stating a conversation with Croon, the customs attaché reports:

*General expense and profit.*—The managing director exhibited to me a statement showing that his company's general expenses for the year 1928 had been 22.72 per centum of that year's total turnover, amounting to nearly two million reichsmarks. Their profit he said was only 8 per centum.

While the 22.72 per centum for general expenses is undoubtedly correct, the percentage of 8 per centum for profit was not accepted.

*Association adds 50 per centum for general expenses and profit.*—From various other velvet manufacturers in Germany I learned that the members of the German Association of Velvet Manufacturers usually add fifty per cent (50 per centum) to the cost of materials and manufacture for general expense and profit. (The percentage is not separated for the two different items.) And, further, that the minimum allowance provided by association rules for general expense and profit on the class of merchandise here under consideration is 42 per centum.

In the incorporated reports of customs attachés, interviews with, and statements of, several German manufacturers appear. From these it appears that an amount is added to the weaving expense by the members of the aforesaid German velvet association, varying from 42 per centum to 50 per centum for general expenses and profit. In arriving at the cost of production, the court below made a finding and allowance of 8 per centum for profit and 22.72 per centum for general expenses, the latter item being based upon Croon's statement as to the general expenses of his company for the year of manufacture. In this connection, the court said:

With reference to general expenses there is not any hard and fast rule to be followed. The statute recognizes this fact, for it allows a sliding scale, placing the minimum at 10 per centum for general expenses and 8 per centum for profits.

It seems to us that the general expenses and usual profit of each individual concern is the criterion. One can not make comparison between the producing costs of one firm and those of another.

When placing an article on the market for sale, it is competent to compare values of such or similar merchandise.

That is not true as to the cost of production method, which seeks to ascertain the actual cost of producing the article.

\*      \*      \*      \*      \*      \*      \*

Then arises the question as to general expenses and profits.

It may be that the association in Germany for the finished product allows 50 per centum for expenses and profits. It seems to us that is not the correct method. We should take the general expenses of the individual manufacturer rather than an agreement to assess a lump sum, which may be too high or too low.

It has been shown that the general expenses of the plaintiff's firm in the year previous to the shipment in question were 22.72 per centum. This did not include profit.

The Government contends that the court was in error in this construction of the law. This contention is, in our opinion, well founded. The statute provides, section 402 (e)—

(e) For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

It will be observed that said subsection 4 provides for an addition for profit of an amount equal to the profit which ordinarily is added by manufacturers in the same country of the same class or kind of product. It does not provide that an addition for profit may be made equal to the profit of the particular manufacturer who made the goods in question. In this respect, therefore, the court below erred in its construction of the law and because of such error failed to give consideration to material and relevant testimony in the record on the matter of an allowance for profit.

The court below also made the following finding:

To convert this amount into German reichsmarks as of the date of shipment we do so by multiplying by the accepted coefficient of 1.12, which makes the value of the merchandise on a production basis on or about the date of shipment as 7.92 reichsmarks per yard. This we find to be the market value of this merchandise on or about the date of shipment.

This finding was based upon a statement in the report of customs attaché Clark, Exhibit 10, that the *inland gross selling price* was arrived at by the members of the said German velvet association by multiplying the price in Swiss francs by the coefficient 1.12 to obtain the price in reichsmarks. It is conceded that this finding is erroneous, and it was this error which the court attempted to correct by its said final order of April 4, 1930. It is not apparent how this coefficient has anything to do with the cost of production, as it was only used in arriving at an inland gross selling price.

Again, in making its finding as to dutiable value, the court below did so in this way:

It seems to us, therefore, we are justified in taking as the cost of production of this merchandise the statement given by Flaskamp & Co. to the special agent as set forth on page 3 of schedule 1 of Exhibit 10.

It is shown it costs 60 francs to pack 100 meters of the finished article, and merchants in figuring on the unfinished article, which is much less valuable and does not require the same care and attention, add 10 francs per 100 meters for packing. That makes the value of the material, labor, and packing, Swiss francs 591.17.

\* \* \* \* \* \* \*

The cost of producing this material, then, would stand as follows:

Total cost of material, labor, and packing (Swiss francs) _____ 591. 17
Adding thereto 30.72 per centum for expenses and profits (Swiss francs) 181. 61

Total cost of producing 100 meters (Swiss francs) _____ 772. 78
Or to produce 1 meter (Swiss francs) _____ 7. 727
Deducting one-twelfth therefrom, being the difference between a meter
and a yard, makes a cost of Swiss francs per yard_____ 7. 08

This method does not produce the result contemplated by the statute. Here the court added to the cost of materials, etc., the cost of packing, and then multiplied this total by the total allowance for general expenses and profits. The statute provides that to the cost of materials, etc. (1), there shall be added the expenses, which, if the same be a per centum, shall be computed upon said total cost of materials, etc. (2). To this amount shall then be added the cost of packing (3). To it also shall be added the allowance for profit (4), which, if it be a per centum, must be computed upon the sum of the items (1), cost of materials, etc., and (2) the usual general expenses. This method is plainly expressed in the statute and, when followed, produces an entirely different sum than that found by the court below in this case. *United States* v. *Vandegrift*, 16 Ct. Cust. Appls. 398, T. D. 43120.

Because of the errors noted, the judgment of the United States Customs Court, First Division, is *reversed*, and the cause is *remanded* for a rehearing on the merits.