[No. 14974-9-III.   Division Three.   November 13, 1997.]

FRANK THOMAS, ET AL., *Appellants*, v. G. A. BREMER, ET AL., *Respondents*.

*John F. Bury* and *Steven Schneider* of *Murphy, Bantz & Bury, P.S.*, for appellants.

*Steven C. Lacy* and *Peter D. Poulson* of *Lacy & Kane, P.S.*, for respondents Bremer.

*Gary A. Riesen, Prosecuting Attorney*, for respondent Chelan County.

SCHULTHEIS, J. — In this 30-year-old dispute over title to nine acres in the Entiat Valley, the court ruled on cross motions for summary judgment that title to the strip had been quieted in G.A. and Elva Bremer by the judgment entered in *Cascade Inv. & Dev. Co. v. Bremer*, Chelan County Cause 26814, affirmed by unpublished opinion, 11 Wn. App. 1009, *review denied*, 84 Wn.2d 1013 (1974). The court also dismissed Frank and Dorothy Thomas's adverse possession claim on summary judgment. The Thomases challenge both decisions. They contend the court should have vacated *Cascade v. Bremer* because a federal district court judge subsequently ruled in the consolidated cases of *Harlow v. United States*, No. C-83-388 (E.D. Wash. Jan. 15, 1988) and *United States v. Bremer*, No. C-86-069 (E.D. Wash. Jan. 15, 1988) that the decision in *Cascade v. Bremer* was based on erroneous evidence presented to the court. They also contend the court should not have dismissed their adverse possession claim. The facts and law of the case compelled the superior court's decisions as they compel ours; we affirm.

At issue is title to a nine-acre parcel of land located in Township 27 North, Range 19 East of the Willamette Meridian, Washington. The original survey of the area was approved in 1883. In 1901 the Northern Pacific Railway Company (N.P.R.) acquired all unpatented and unreserved land in odd-numbered sections in the township by railroad land grant. In 1903 N.P.R. deeded to James W. Bonar the SW 1/4 of the SE 1/4 of section 15. In 1908 the United States issued a patent to Gus A. Bremer conveying to him the E 1/2 of the SW 1/4 and the SW 1/4 of the SW 1/4 of section 14. The SE 1/4 of the SE 1/4 of section 15, which lies between the Bonar and Bremer lands, was originally patented to David M. Farris together with the NE 1/4 of the SE 1/4 and the SE 1/4 of the NE 1/4 of section 15 and the NW 1/4 of the SW 1/4 of section 14. Thus, there was no overlap between these parcels as they were originally settled, described, and conveyed.

The 1883 survey was seriously defective, however, because the surveyors set only two exterior corners—one on the north township boundary and one on the south township boundary—which were not in alignment, and apparently set no interior corners. The lack of corners and monuments made locating claims very difficult. Because of complaints from those who had settled the area, including Gus A. Bremer, the federal government in 1916 authorized a resurvey of the township and adjoining townships under the 1909 Resurvey Act. Resurveys are authorized "*Provided*, That no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement." 43 U.S.C. § 772 (1995).

The resurvey, conducted for the purpose of retracing and restoring the original survey and approved in 1923, revealed a discrepancy between the paper locations of several settled claims and their actual location on the ground. To protect the bona fide claims of the owners, the government surveyor identified the property they actually settled

by tract numbers and described them by metes and bounds descriptions. The land granted to N.P.R. as part of section 15 was designated Tract 41, the land patented to D.M. Farris as parts of sections 14 and 15 was designated Tract 42, and the land patented to Gus Bremer as part of section 14 was designated Tract 43. The tracts do not overlap, but to a large extent they overlie different sections than those named in the patents. Unfortunately, none of the property was re-patented. Nor was any other action taken to correct the record title of these lands.

George B. Brown acquired the Bonar parcel described in the N.P.R. deed and the Farris parcel described in the original patent. When he died, those parcels (and others) passed through his will in 1941 to his son John B. Brown. Gus A. Bremer died in 1942 and his land passed to his son G.A. Bremer in 1950 by inheritance and quitclaim deed from the elder Bremer's other heirs.

In July 1965 John B. Brown agreed to sell his ranch to Frank M. and Dorothy H. Thomas. The earnest money receipt/purchase and sale agreement describes the property by quarter sections, including those once owned by Mr. Bonar and Mr. Farris, but the June 1967 quitclaim deed from Mr. Brown to the Thomases describes the property by reference to the resurvey tracts as well as the section descriptions. The quitclaim deed purports to convey as Parcel "E":

> That portion of Tract 41, according to the dependent resurvey of Township 27 North, Range 19, E. W. M., dated January 27, 1923, which was conveyed by the Northern Pacific Railway Company to James W. Bonar, by deed dated December 31, 1903; recorded February 26, 1904 in volume 54, page 600, wherein the property was described as the Southwest quarter of the Southeast quarter of Section 15, Township 27 North, Range 19, E. W. M., records of said County.

and as Parcel "I":

> Tract 42, according to the dependent resurvey of Township 27 North, Range 19 E. W. M., dated January 27, 1923, EXCEPT

that portion thereof conveyed to Chelan County, Washington for road . . . .

In December 1969 the Bremers moved onto the 120 acres they claimed under the original patent to his father, Gus A. Bremer. In April 1970 the Thomases sold Tract 42 to Cascade Investment and Development Company. Tract 42 overlies much of the land described in the Bremer patent. The Bremers refused to vacate, so Cascade and the executor of John B. Brown's estate brought suit against the Bremers to quiet title in Tract 42.[1]

On the evidence before it, the Chelan County Superior Court ruled in favor of the Bremers. The oral opinion of Judge Leahy, which this court incorporated in its unpublished opinion, explains the rationale and the law that led to his decision. Essentially, federal law protected the rights of entrymen who perfected their claim before the resurvey, so the Bremers owned the lands described on their patent. Moreover, there was apparently testimony before the court that John B. Brown treated the land at issue as belonging to the Bremers. Finally, Mr. Brown's quitclaim deed could convey only what he owned and "Tract 42" had never been conveyed to him. The court entered judgment decreeing the Bremers to be

> the owners of the following described real property located in Chelan County, Washington according to the 1883 survey as reestablished by the 1916 dependent resurvey:
>
>> Southwest quarter of the southwest quarter and the east half of the southwest quarter of section 14, township 27 north, range 19, east of the Willamette Meridian,
>
> and plaintiffs, Cascade Investment & Development Co. and Clarence L. Haynes, as Executor of the Estate of John B. Brown, deceased, and their predecessors, be and they are hereby adjudged to have no right, title or interest in said real property described above or any portion thereof.

---

[1] Mr. Thomas claims he sold Tract 42 to Cascade, but neither he nor anyone else explains why Mr. Brown's executor was a plaintiff while the Thomases were not a party to the quiet title suit.

In the 1980s the dispute regarding the location of the Bremer lands was again the central focus of litigation, this time in federal district court. In consolidated cross-quiet title actions between the Bremers and the United States, and the Harlows and the United States, the federal court had before it evidence that was not before the Chelan County court including field survey notes, correspondence between participants in the resurvey and government officials who authorized it, and documents from early settlers. The court held the acreage conveyed by the patents issued to the Bremers' and Harlows' predecessors-in-interest is located on the ground as Tracts 43 and 46 of the resurvey. In other words, the survey protected the bona fide claims and rights of the early settlers by establishing and describing what was actually possessed and developed by them. The district court rejected *Cascade v. Bremer* as based on erroneous evidence before the court; it was not binding against the United States, which was not a party to it, nor was it binding on the federal court. The oral opinion of Judge Alan McDonald is every bit as well reasoned as that of Judge Leahy.

In February 1992 the Thomases commenced this suit to quiet title to the nine acres of Tract 41 located in the SW$^1$/$_4$ of the SW$^1$/$_4$ of section 14. In their complaint, the Thomases claim title by conveyance from Mr. Brown or by adverse possession, and seek vacation of Judge Leahy's decision in *Cascade v. Bremer* under CR 60(b)(4), (6) and/or (11) to the extent it is found to cover the nine acres at issue.[2] The Bremers counterclaimed for quiet title, and compensatory damages for the value of hay removed from the nine acres and emotional distress.

In July 1993, on cross-motions for summary judgment, the court found the 1973 judgment in *Cascade v. Bremer* encompassed the nine acres at issue in this case, but neither facts nor law warranted vacating the judgment. The

---

[2]The claim against the County is only for appropriate adjustment of County records to show the Thomases' exclusive ownership of the nine acres.

court denied the Thomases' CR 60(b) motion. The court denied both parties' motions for partial summary judgment on the adverse possession claim. The parties submitted additional documents and in June 1995 the court granted the Bremers' motion for partial summary judgment and dismissed the adverse possession claim. The court entered findings of fact and conclusions of law, ruled *Cascade v. Bremer* quieted title to the disputed nine acres in the Bremers and that the Thomases had not acquired the property by adverse possession, and entered final judgment dismissing the Thomases' claims in their entirety with prejudice. The Thomases appeal.

The Thomases' many assignments of error raise only two issues: (1) whether *Cascade v. Bremer* quieted title to these nine acres in the Bremers, and if so, whether that decision should be vacated on the Thomases' motion; and (2) whether the Thomases' pleadings and affidavits raise a genuine issue of material fact on their adverse possession claim.

■■ We first consider whether *Cascade v. Bremer* mandates dismissal of the Thomases' claim of ownership by record title. We conclude it does. *Cascade v. Bremer* quieted title in the Bremers to the quarter section underlying the nine acres, and, therefore, to the nine acres. The Thomases argue the trial court should have vacated the final judgment in *Cascade v. Bremer* under CR 60(b). But the Thomases cannot make use of CR 60(b) because it authorizes the court to relieve only *a party* or its legal representative from a final judgment on motion. A stranger to the proceeding cannot ask the court to vacate its final judgment. *State ex rel. McConihe v. Steiner*, 58 Wash. 578, 582-83, 109 P. 57 (1910). As the Thomases emphasize, they were not a party to *Cascade v. Bremer*. In addition, after a judgment has been affirmed on appeal, the superior court no longer has jurisdiction to consider a CR 60 motion to vacate its own judgment. *See Kath v. Brown*, 53 Wash. 480, 482-83, 102 P. 424 (1909).

■ Although the Thomases cannot attack the *Cascade*

*v. Bremer* decision through use of the CR 60(b) motion, they arguably also are not bound by it. *State ex rel. McConihe*, 58 Wash. at 584. In this case, however, it makes no difference. *Cascade v. Bremer* quieted title to the SW 1/4 of the SW 1/4 of section 14 in the Bremers. The Thomases cannot establish record ownership of the nine acres at issue, which are the part of Tract 41 that overlies the SW 1/4 of the SW 1/4 of section 14. Mr. Brown did not hold title to any property in section 14, so he could not convey the nine acres to the Thomases in the quitclaim deed by quarter section description. And he did not hold title to Tract 41, so he could not convey the nine acres of Tract 41 that overlie section 14 by reference to a part of Tract 41, or by metes and bounds description, either.[3] The only way the Thomases could have acquired title to the property at issue would have been through adverse possession.

██ We next consider whether there are genuine issues of fact preventing summary dismissal of the Thomases' adverse possession claim. There are not. When a party moving for summary judgment meets its initial burden of showing there is no dispute as to any issue of material fact, the burden shifts to the nonmoving party. If the nonmoving party then

> "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", then the trial court should grant the motion . . . . "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

*Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 66, 837 P.2d 618 (1992) (quoting *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986))).

---

[3]The Thomases' assertion in their briefs that the nine acres are actually in section 15 is not supported by the record.

■ Because the Thomases' property tax receipts cover property in sections 15 and 23, whereas the Bremers' receipts cover the SW$^1$/$_4$ of the SW$^1$/$_4$ of section 14, the Thomases cannot establish an adverse possession claim to the nine acres at issue under the seven-year rule of RCW 7.28.070. They also cannot establish exclusive and uninterrupted possession of the nine acres given the multiple criminal and civil trespass complaints brought by the Bremers against them, the destruction of every fence they put up and the Bremers' assertion of their ownership rights in the property for more than 20 years. Summary dismissal is appropriate because the Thomases cannot prove an essential element of their claim.

The piecemeal adjudication of the property disputes in the Entiat Valley is unfortunate. The original settlers' claims did not overlap, and their actual claims, as they existed on the ground, were apparently preserved by the resurvey tract designations. But because the title documents were never corrected, any successor could assert a claim based on the original patent description if it encompassed choicer property. The Bremers have done exactly that, with foreseeably disastrous results. The state and federal decisions may each be correct based on the evidence presented in those courts, but together they create chaos. However unfair it must seem to the Thomases, the procedural posture of this case forces us to affirm the judgment of the trial court. We deny both parties' requests for attorney fees because neither party provides any basis for awarding fees.

Affirmed.

SWEENEY, C.J., and THOMPSON, J. Pro Tem., concur.

Reconsideration denied December 18, 1997.

Review denied at 135 Wn.2d 1009 (1998).