[No. 36222-8-II.   Division Two.   July 22, 2008.]

*In the Matter of the Estates of* ALFRED S. PALMER ET AL.

DAWN PALMER GOLDEN, *Appellant*, v. WORLD GOSPEL MISSION ET AL., *Respondents*.

*John A. Rorem*, for appellant.

*James V. Handmacher* (of *Morton McGoldrick, PS*) and *Douglas N. Kiger* (of *Blado Kiger, PS*), for respondent.

¶1 HOUGHTON, J. — Dawn Palmer Golden appeals the trial court's order upholding a commissioner's order denying her motion to disqualify World Gospel Mission as a beneficiary of her parents' trust. She argues that by drafting and witnessing her parents' trust and testamentary documents naming it as a trust beneficiary, World Gospel Mission violated RPC 1.8(c)[1] and it engaged in the unau-

---

[1] The wills at issue here were drafted in 1997. Our Supreme Court has adopted changes to RPC 1.8 since then. All versions essentially prohibit a lawyer from preparing an instrument benefiting certain types of individuals.

thorized practice of law. World Gospel Mission cross-appeals Golden's appeal as untimely. We affirm.

FACTS

¶2 On April 3, 1997, Alfred and Sarah Palmer executed a revocable living trust agreement establishing the Alfred S. Palmer and Sarah L. Palmer Trust. Also on April 3, the Palmers executed pourover wills that bequeathed their entire estate to the trust. The Palmers designated 15 percent of the trust estate to be divided equally between their children; 3.5 percent to their grandchildren; 6.5 percent to other religions or organizations; and 75 percent to World Gospel Mission to invest and use "at [its] discretion wherever most needed" and to divide among field missions for capital improvements. Clerk's Papers at 18.

¶3 World Gospel Mission is an Illinois charitable non-profit corporation headquartered in Marion, Indiana, that performs international missionary service. World Gospel Mission employed Don Fivecoat.[2] World Gospel Mission, through Fivecoat, prepared the powers of attorney, wills, and trust documents that the Palmers executed on April 3. Fivecoat also witnessed the documents' execution. According to Fivecoat, the Palmers wanted to make a charitable contribution to World Gospel Mission after hearing his presentation on estate planning and charitable giving at an annual World Gospel Mission missionary conference.

¶4 Fivecoat met with the Palmers, discussed their wishes for their estate upon their death, and filled out a World Gospel Mission preprinted estate planning form. According to Fivecoat, the Palmers told him that they wanted to leave 90 percent of their estate to World Gospel Mission. Fivecoat transmitted the planning form to a World Gospel Mission paralegal at the organization's headquarters; the paralegal completed the Palmers' form wills, powers of attorney, and revocable living trust documents. A

---

[2] Fivecoat has since retired from World Gospel Mission.

World Gospel Mission attorney reviewed the documents before returning them to Fivecoat.

¶5 Fivecoat then reviewed the draft documents with the Palmers. According to Fivecoat, at that time, Sarah Palmer indicated that she had reservations about leaving 90 percent of the estate to World Gospel Mission. The Palmers decided to reduce their estate share to World Gospel Mission to 75 percent. The World Gospel Mission paralegal made those and other changes to the estate planning documents at Fivecoat's request and, on April 3, Fivecoat witnessed the Palmers' execution of the documents.[3]

¶6 Alfred Palmer died on June 27, 2001, and Sarah Palmer died on July 10, 2003. On June 22, 2004, Donald Palmer became personal representative of their estate.

¶7 In November 2006, Golden moved to disqualify World Gospel Mission as a trust beneficiary under RCW 11.12.160. In December, Golden filed an amended petition arguing in part that Fivecoat had witnessed the wills' execution and represented World Gospel Mission as a 75 percent actual beneficiary; the Palmers' surviving heirs should inherent World Gospel Mission's interest under the intestacy statute; and World Gospel Mission engaged in the unauthorized practice of law by drafting powers of attorney, wills, and trust documents and naming itself as a beneficiary.

¶8 On January 30, 2007, a superior court commissioner ordered that, to the extent that Golden's motion and petition were a will contest, they were dismissed as time-barred by RCW 11.24.010. The commissioner also determined that, to the extent that Golden's motion and petition challenged the trust preparation by a person held to the standard of

---

[3] According to Fivecoat, he regularly provided World Gospel Mission estate planning forms to individuals requesting them and transmitted those documents to World Gospel Mission headquarters. He attested that World Gospel Mission used estate planning forms prepared by an attorney, a World Gospel Mission paralegal would typically fill in blank forms, and a World Gospel Mission attorney would review them. He attested that, in reviewing estate planning documents with individuals, he invited them to seek independent counsel. He also attested that he was a salaried employee of World Gospel Mission but received no additional or different compensation for his estate-planning-related activities.

an attorney, insufficient evidence supported disqualifying World Gospel Mission as a trust beneficiary under RPC 1.8.

¶9 On January 31, Golden moved to revise the commissioner's order. Golden did not challenge the commissioner's finding that her motion was time barred under RCW 11.24.010 to the extent it was a will contest. On February 22, the trial court declined to revise the commissioner's order.[4]

¶10 On April 18, Golden appealed the trial court's February 22 order. On May 9, Golden's counsel filed a motion to declare the February 22 order void under CR 54(f)(2), arguing that the trial court filed the order without giving notice to Golden. On May 24, after argument, the trial court granted Golden's motion to declare the February 22 order void and "affirmed" the Commissioner's January 30 order. On June 11, World Gospel Mission cross-appealed the trial court's order voiding its February 22 order.

## ANALYSIS

¶11 Golden contends that the trial court erred in upholding the commissioner's decision that RCW 11.24-.010[5] barred her claims as based on a will contest. She asserts that her claims are not time barred as they are based on the testamentary trust.[6]

---

[4] In her reply brief, Golden contends that the trial court did not decide whether RCW 11.24.010 barred her petition because she did not challenge the commissioner's decision in that regard. We disagree because the trial court filed an order that upheld the commissioner's entire order.

[5] Under former RCW 11.24.010 (2006),

If any person interested in any will shall appear within four months immediately following the probate . . . and by petition to the court . . . contest the validity of said will, . . . he or she shall file a petition containing his or her objections and exceptions to said will . . . .

If no person shall appear within the time under this section, the probate . . . of such will shall be binding and final.

RCW 11.24.010 was amended by Laws of 2007, ch. 475, § 4. The amendment does not affect the proposition in this opinion.

[6] In its cross appeal, World Gospel Mission argues that the trial court should have denied Golden's motion to declare its February 22 order void, rendering her

¶12 On April 3, 1997, the Palmers executed pourover wills that bequeathed their entire estate to their trust and executed revocable living trust agreements distributing 75 percent of their estate to World Gospel Mission. Golden's challenge to the 75 percent distribution of the Palmers' estate to World Gospel Mission cannot be separated from her challenge to the validity of that portion of their wills conveying the interest flowing to World Gospel Mission. And before the superior court, Golden challenged World Gospel Mission as a trust beneficiary based on RCW 11.12.160, addressing the effect of an interested witness to a will. Under these facts, Golden's challenge is, in all important respects, a will contest. She cannot have it both ways. We decline to treat the wills and trust as one document for the purpose of Golden's claims and as separate documents for purposes of allowing her to defeat a statute of limitations bar.[7]

¶13 Under RCW 11.24.010, an interested party must contest a will within four months following probate. The trial court admitted the Palmers' wills to probate on June 22, 2004. Golden filed her initial petition to disqualify

appeal untimely. The trial court heard argument on the timeliness issue based on notice. A record of that hearing is not before us on review. Nevertheless, the trial court had the discretion under CR 60(b) to relieve a party from its order based on mistake, inadvertence, or excusable neglect. *Nw. Land & Inv., Inc. v. New W. Fed. Sav. & Loan Ass'n*, 64 Wn. App. 938, 942, 827 P.2d 334 (1992); *United Pac. Ins. Co. v. Disc. Co.*, 15 Wn. App. 559, 562, 550 P.2d 699 (1976). A trial court abuses its discretion when it bases its decision on unreasonable or untenable grounds. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994). After hearing argument, the trial court determined that the motion had merit. We cannot say that it abused its discretion. We consider Golden's appeal.

[7] In her motion to disqualify World Gospel Mission as a trust beneficiary, Golden argued that she did not contest the will itself but sought only to disqualify World Gospel Mission as an interested witness. To the contrary, she argued to the trial court that the wills and trust documents must be read together since the trust itself was not a beneficiary but a conduit to actual beneficiaries. In arriving at our decision, we note our authority to analyze equitable claims on a case-by-case basis and to exercise our powers to prevent the enforcement of a legal right to prevent inequity or to do substantial justice. *Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 460, 45 P.3d 594 (2002). We also note that Golden managed her parents' financial affairs from October 1999 until their deaths and acted under their powers of attorney, so the facts present no issue of her lack of notice of the probate. *See In re Estate of Little*, 127 Wn. App. 915, 920, 113 P.3d 505 (2005), *review denied*, 156 Wn.2d 1019 (2006).

World Gospel Mission as a beneficiary on November 9, 2006, more than two years after the wills entered probate. The trial court correctly upheld the commissioner's determination that Golden's motion and petition were time barred under RCW 11.24.010 to the extent the matter was a will contest. We affirm as the matter is time barred in its entirety under RCW 11.24.010.[8],[9]

¶14 Affirmed.

PENOYAR, A.C.J., and HUNT, J., concur.

---

[8] Because her appeal is time barred by RCW 11.24.010, we do not address the substance of Golden's arguments that World Gospel Mission, through Fivecoat, unlawfully practiced law by drafting and executing the Palmers' trust documents and violated RPC 1.8(c) and public policy by naming itself as a trust beneficiary. We note, however, that this case raises very serious questions regarding World Gospel Mission's participation in the unauthorized practice of law in light of Washington's public policy to protect the public from laypersons completing legal instruments affecting important rights. *See Wash. State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n*, 91 Wn.2d 48, 60, 586 P.2d 870 (1978).

[9] On appeal, Donald Palmer takes no position on whether we should disqualify World Gospel Mission as a beneficiary. But he asserts that if we reverse the trial court, we must remand for further findings regarding distribution of World Gospel Mission's interest to surviving heirs. Because we affirm, we do not reach his argument, or Golden's argument that we should divide World Gospel Mission's 75 percent interest equally between her and Donald under the intestacy statute.