[Nos. 67195-2-I; 67277-1-I.   Division One.   December 3, 2012.]

*In the Matter of the Estate of* DAVID DANIEL FINCH.

RHODA CASSELL, *Individually and as Personal Representative, Appellant,* v. DOUGLAS A. PORTELANCE ET AL., *Respondents.*

*Mark Leemon* (of *Leemon + Royer PLLC*), for appellant.

*Lory R. Lybeck* (of *Lybeck Murphy LLP*); and *Mary H. Spillane* (of *Williams Kastner & Gibbs*), for respondents.

¶1 BECKER, J. — A defendant in a wrongful death suit obtained an order vacating the appointment of the personal representative. The court then dismissed the wrongful

death suit with prejudice, reasoning that the personal representative did not have the right to pursue the wrongful death suit at the time she filed it, and the statute of limitations had since expired. We reverse. The wrongful death defendant lacked standing to attack the probate court's order.

¶2 Dr. Douglas Portelance is the wrongful death defendant and the respondent in this appeal. Dr. Portelance saw David Finch several times in 2004 and again in 2006. Finch complained of rectal bleeding. Dr. Portelance told Finch the bleeding was due to hemorrhoids and not to worry about it. In July 2006, a different doctor diagnosed Finch with terminal colorectal cancer.

¶3 Finch and his wife Rhoda Cassell met with an attorney to discuss bringing a malpractice action against Dr. Portelance. They asked a second attorney to prepare a will. The attorney prepared a draft of a will and e-mailed it to Cassell on August 27, 2007. That same day, Cassell asked two neighbors to come over and witness the will signing. Finch was very weak. He died of colon cancer on September 2, 2007, at age 50, a little over a year after being diagnosed.

¶4 In November 2008, the court admitted Finch's will to probate. The will declared Cassell the sole beneficiary of Finch's estate and named her personal representative. The probate court appointed Cassell personal representative with nonintervention powers.

¶5 In December 2008, Cassell sued Dr. Portelance for wrongful death, individually and also as personal representative of the estate, alleging that Dr. Portelance committed medical malpractice by failing to diagnose the colon cancer.

¶6 Four days before the wrongful death trial was scheduled to begin in September 2010, Dr. Portelance moved to dismiss the suit on the basis that the will appointing Cassell personal representative was a fraud. As evidence of fraud, Dr. Portelance provided a hospice nurse's notation from August 27, 2007, the day Finch allegedly signed the

will. The notation described Finch's mental status as "comatose." The trial judge granted a continuance to permit Dr. Portelance to investigate and address the issue with the probate court.

¶7 Dr. Portelance deposed the two neighbors who witnessed the will and the family friend who served as notary public. They admitted they had not actually seen Finch sign the will. Dr. Portelance also obtained a sworn declaration from the nurse. She reiterated that Finch was comatose and heavily medicated when she saw him. With this evidence in hand, Dr. Portelance moved in the probate court for permission to intervene in the probate. He asked the court to vacate the order that appointed Cassell as personal representative because it was based on a will that had not been signed by a testator with the requisite mental capacity.

¶8 Cassell responded that Dr. Portelance's motion was a poorly disguised will contest that he had no standing to bring and for which the four-month limitation period in RCW 11.24.010 had long since passed. Cassell denied the allegations of fraud, but she did not initially supply sworn declarations or other evidence. Dr. Portelance replied that Cassell's lack of evidence was "very telling" and it showed there was "no actual dispute that Mr. Finch was comatose" on the date of the will signing. He hinted at some conflict between Cassell and Finch's family and suggested that she had obtained a fraudulent will for self-serving purposes.

¶9 At a hearing, Cassell argued that the witnessing error was unintentional, a lay person's mistake. She submitted her own sworn declaration explaining that the witnesses did not want to go in to the room where her husband lay on his deathbed, so she alone took the will into the room for him to sign while they waited in the adjoining room. Declarations by Finch's parents stated that they had talked to Finch numerous times during the week before he died and that he understood what they were saying and responded appropriately. They said that "the whole family" supported Finch's choice of Cassell to handle his estate.

Cassell submitted sworn affidavits from each of Finch's heirs consenting to her appointment as personal representative and waiving notice of any hearings relating to her appointment. She continued to argue that Dr. Portelance had no standing to challenge her appointment under the will.

¶10 The will contest statute permits "any person interested in any will" to petition for a determination of issues "respecting the competency of the deceased to make a last will and testament, or respecting the execution by a deceased of the last will and testament under restraint of undue influence or fraudulent representations, or for any other cause affecting the validity of the will or a part of it." RCW 11.24.010. The probate judge decided that Dr. Portelance was a "person interested" in Finch's will within the meaning of the statute because his position as defendant in the wrongful death suit gave him an interest in challenging Cassell's appointment as personal representative. The judge did not make a finding of fraud, but he was persuaded that the witnesses had not properly witnessed the will, that the will was therefore invalid, and that the order appointing Cassell as personal representative under the will was also invalid.

¶11 At the same hearing, the probate judge determined that Cassell could validly be appointed personal representative as Finch's surviving spouse. *See* RCW 11.28.030; RCW 11.68.011(2)(b). He issued a new order reinstating Cassell as personal representative by operation of statute. Cassell immediately signed and filed with the court a document ratifying all of her previous actions as personal representative.

¶12 The judge who was presiding over the wrongful death trial then held a hearing on the impact of the probate court's orders. The trial judge determined that the probate court had nullified its original order appointing Cassell as personal representative, and therefore any actions taken by Cassell pursuant to that order—including filing the wrong-

ful death suit—were likewise null and void. The trial judge concluded that because the deadline for filing suit under the three-year statute of limitations had passed by the time the probate court reinstated Cassell as personal representative, the suit could not be refiled. The result was an order dismissing the wrongful death suit with prejudice.

¶13 Cassell assigns error to the probate judge's decisions permitting Portelance to intervene in the probate and removing Cassell as personal representative, and the trial judge's decision to dismiss the wrongful death case.

### 1. Standing to bring a will contest

¶14 A trial court's interpretation of a probate statute is a question of law reviewed on appeal de novo. *In re Estate of Jones*, 152 Wn.2d 1, 8-9, 93 P.3d 147 (2004). A court may treat a motion as a will contest, even where the petitioner styles it otherwise. *See, e.g., In re Estates of Palmer*, 146 Wn. App. 132, 137-38, 189 P.3d 230 (2008). Although Dr. Portelance denied that his motion to intervene was an attempt to initiate a will contest, the probate judge treated it as a will contest governed by RCW 11.24.010. A will contest is the proceeding in which a court determines issues "affecting the validity of the will." RCW 11.24.010. Dr. Portelance based his motion on "technical deficiencies" affecting the validity of the will:

> What we're here to do is to point out that the appointment of Ms. Cassell as PR was facially invalid. It was void. It remains void for a number of reasons. . . . There were many technical deficiencies.
>
> Number one, by all evidence . . . Mr. Finch was not of sound mind and body. He was incompetent and could not have signed a will . . . .
>
> . . . .
>
> Then I looked at his signature, which is not really a signature. . . .
>
> . . . .

. . . an invalid attempt to make a will was made. There were no witnesses to the will. We took their depositions. No one saw the signature.

If no one saw the signature, *the will is invalid*.

(Emphasis added.) These allegations—that Finch lacked the capacity to make a will on the day he signed it, that he had not signed the will, and that the will was not properly witnessed—are precisely what a court considers in a will contest under RCW 11.24.010. The judge did not err by treating Dr. Portelance's motion as a will contest. The judge did err, however, in concluding that Dr. Portelance was a proper will contestant.

¶15  A will contest can by initiated only by a person "interested" in the will. RCW 11.24.010. The judge erroneously ruled that the term "interested" was broad enough to include Dr. Portelance's interest, as a wrongful death defendant, in establishing that Cassell was not lawfully serving as the estate's personal representative when she commenced the suit against him.[1] Only an individual who possesses a "direct, pecuniary interest" in the devolution of the testator's estate may contest a will. *In re Estate of O'Brien*, 13 Wn.2d 581, 591, 126 P.2d 47 (1942) (executor of earlier will who attempted to challenge a later will on grounds of undue influence and lack of testamentary capacity was not authorized to initiate a will contest).

¶16  That a person in Dr. Portelance's relationship to the estate has no standing under the probate code to challenge the appointment of the personal representative is confirmed by *In re Estate of Upton*, 199 Wash. 447, 92 P.2d 210 (1939). In that case, the appellants were individuals who had been sued for wrongful death. They moved to have the appointment of the personal representative set aside on the ground that persons interested in the estate had not been given timely notice of presentation of the petition for letters of administration. The trial court denied the motion, and

---

[1] *See* Report of Proceedings (Apr. 22, 2011) at 17-19.

our Supreme Court affirmed, noting that the appellants were not heirs, distributees, or creditors of the estate. "Their only relation to it was that of possible debtors. It would be of no moment to them whom the court appointed as administrator." *Upton*, 199 Wash. at 453.

¶17 The record shows that Finch's heirs were satisfied with having Cassell serve as personal representative. Any technical deficiencies in the manner of her appointment were of no legitimate concern to Dr. Portelance. Because Dr. Portelance did not claim a direct interest entitling him to take a part of Finch's estate, he lacked standing to contest the will under RCW 11.24.010.[2]

### 2. Standing to intervene to show fraud

¶18 Dr. Portelance freely admits that he is not Finch's heir, and he makes it clear that he does not rest his claim of standing upon a right to contest the will under RCW 11.24.010. Dr. Portelance's theory is that he had standing to challenge Cassell's appointment as personal representative because he possessed evidence that Cassell had committed fraud by presenting the court with a will she knew was invalid.

¶19 Dr. Portelance invokes CR 60(b)(4) as authority for intervening to show fraud. But CR 60(b) is of no use to Dr. Portelance. As an avenue of relief from a final judgment or order, CR 60(b) is available only to a "party."

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
>     . . . .

---

[2] The probate court, after deciding to allow Dr. Portelance to intervene to contest the will, denied Cassell's motion to dismiss Dr. Portelance's motion as time barred under the four-month limit of RCW 11.24.010 due to perceived technical irregularities in Cassell's notice of probate. Because we conclude Dr. Portelance had no standing to contest the will, we need not address the timing issue. By declining to address this issue, we do not imply approval of the court's ruling.

(4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

CR 60(b). A motion under CR 60(b) is part of the original proceeding. *See Lindgren v. Lindgren*, 58 Wn. App. 588, 596, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991). "A stranger to the proceeding cannot ask the court to vacate its final judgment." *Thomas v. Bremer*, 88 Wn. App. 728, 734, 946 P.2d 800 (1997), *review denied*, 135 Wn.2d 1009 (1998). Portelance was not a party to the probate of Finch's will. Therefore, CR 60(b)(4) did not authorize his intervention.

¶20 Dr. Portelance's intervention in the probate belongs in the category of a collateral attack. A collateral attack is an attempt to impeach a judgment in an action *other than* that in which it was rendered. *Batey v. Batey*, 35 Wn.2d 791, 798, 215 P.2d 694 (1950). Dr. Portelance's true concern was not with the probate but with the wrongful death action. His motion to dismiss the wrongful death action depended upon first knocking out the order appointing Cassell as personal representative.

¶21 A stranger to the original proceeding has the right to collaterally impeach a judgment that was procured through the fraud of either or both of the parties for the purpose of defrauding that stranger. *Peyton v. Peyton*, 28 Wash. 278, 299, 68 P. 757 (1902) (quoting 1 A.C. Freeman, A Treatise on the Law of Judgments § 334 (4th ed. 1892)). To fit within this principle, Dr. Portelance would have to show both that Cassell obtained her first appointment as personal representative through fraud and that she engineered the appointment with the specific purpose of defrauding him in particular. The record contains no evidence to support either proposition.

¶22 Finch's estate was entitled to have a personal representative to pursue the claim of wrongful death. No machinations concerning Finch's will were necessary to make the wrongful death suit viable. No misrepresenta-

tions concerning what happened at the will signing were necessary to achieve Cassell's appointment as personal representative. As the probate court's second order of appointment recognized, even if the will was invalid, Cassell was entitled to be the personal representative as Finch's surviving spouse. There is simply no evidence or inference of fraudulent intent. Because Cassell's appointment was not procured through fraud for the purpose of injuring Dr. Portelance, Dr. Portelance was not entitled to attack it collaterally.

¶23 In summary, Dr. Portelance lacks standing under existing law to challenge the order appointing Cassell as personal representative.

¶24 Dr. Portelance acknowledged at oral argument that he brings this appeal as a matter of first impression with the objective of opening up a new frontier for discovery and defense in wrongful death actions. Dr. Portelance contends "anyone should be welcome" to bring evidence of fraud to the attention of a court that has been defrauded, "whether because of a personal interest or merely as amicus curiae."[3] In other words, he advocates that anyone with time to spend digging up irregularities in probate files should be given a roving commission to uncover fraud and seek vacation of orders. None of the cases Dr. Portelance cites lend support to this novel idea,[4] and we will not entertain it.

---

[3] Brief of Respondent at 23.

[4] Dr. Portelance cites *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 66 S. Ct. 1176, 90 L. Ed. 1447 (1946); *In re Lawrence*, 293 F.3d 615, 627 n.11 (2d Cir. 2002); and *Southerland v. Irons*, 628 F.2d 978, 980 (6th Cir. 1980).

Dr. Portelance's desire to serve as amicus curiae to root out fraud is derived from *Universal Oil*, a case involving allegations that a judge was bribed to render a favorable judgment. A lower court allowed attorneys for companies who refused to be recognized as parties, but who hoped to see the judgment vacated, to assist the court as amici by seeking appointment of a master. Dr. Portelance does not attempt to show that the circumstances of the present case are similar. In any event, the court did not endorse appointing amici even in those unusual circumstances; it merely held that the amici were not entitled to an award of fees. "Amici selected by the court to vindicate its honor ordinarily ought not be in the service of those having private interests in the outcome." *Universal Oil*, 328 U.S. at 581.

¶25 The probate court erred when it allowed Dr. Portelance to intervene and when it removed Cassell as personal representative under the will. As Cassell was a validly appointed personal representative of the estate when she sued Dr. Portelance, the trial court erred when it dismissed that suit.[5]

¶26 The order granting Portelance's motion to intervene in the probate is reversed. The order removing Cassell as personal representative is reversed. The order dismissing Cassell's wrongful death suit is reversed.

Cox and Lau, JJ., concur.

---

[5] Cassell argues that even if her appointment was invalid at the time she filed the wrongful death suit, dismissal of the suit was unnecessary because, among other things, she was acting as a de facto personal representative. Given our decision that her appointment was valid, we need not address this issue.