IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of: | ) | No. 37255-3-III |
| | ) | (consolidated with |
| K. WENDELL REUGH. | ) | No. 37290-1-III) |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

PENNELL, C.J. — The adult children of K. Wendell Reugh appeal trial court

decisions denying their attempt to invalidate distribution of their father's residuary estate

through a trust. Although the children are beneficiaries of the trust, the bulk of the trust

assets are designated to a charitable foundation. After lengthy litigation, the trial court

dismissed the children's petition to invalidate the trust on the basis that it was a de facto

will contest and not filed within the applicable statute of limitations. We agree with this

assessment. In addition, we find the trial court did not abuse its discretion by refusing to

defer its dismissal decision to accommodate the children's last-minute request for

mediation or by awarding attorney fees to the other parties. This matter is affirmed.

## FACTS

K. Wendell Reugh was a wealthy real estate developer in the Spokane area.

Mr. Reugh[1] was survived by three adult children—James R. Reugh, Mark W. Reugh, and

---

[1] For clarity and readability, we refer to K. Wendell Reugh throughout the opinion as Mr. Reugh.

JoLynn Reugh-Kovalsky. Prior to his death, Mr. Reugh retained attorney Thomas Culbertson as his estate planner. Over the course of several years, Mr. Reugh debated whether to leave his considerable fortune to his children or to make a large charitable gift. Mr. Culbertson ultimately proposed a revocable living trust that would be funded by Mr. Reugh's estate. He provided Mr. Reugh with a draft copy of a trust agreement. This draft copy contained a default clause that would provide the Inland Northwest Community Foundation (INWCF) with Mr. Reugh's residuary trust estate if Mr. Reugh did not establish his own charitable foundation or charitable donor-advised fund by the time of his death.

On January 4, 2011, Mr. Reugh executed a trust agreement creating the "K. Wendell Reugh Revocable Living Trust" (Mr. Reugh's Trust or the Trust). Clerk's Papers (CP) at 40-51 (some capitalization omitted). Mr. Reugh was both the settlor and trustee of the Trust. Article II of the Trust stated "The Settlor hereby transfers to the Trustee the sum of One Hundred Dollars ($100.00)." *Id*. at 40. The Trust assigned to Mr. Reugh, as trustee, various duties and benefits. Article VI of the Trust provided for distributions to be made upon the death of Mr. Reugh, including $1,500,000 to each of his children, and $1,000,000 to the "K. Wendell Reugh Charitable Remainder Trust" for the

initial benefit of Doreen Decker, Mr. Reugh's longtime companion. *Id*. at 44-45;

*see also id*. at 5.

The Trust directed the successor trustee to distribute the remainder of the Trust

estate to a charitable foundation or a charitable donor-advised fund to be created by

Mr. Reugh. If such an organization did not exist at the time of Mr. Reugh's death, the

Trust directed the successor trustee to distribute the remainder to INWCF.

Contemporaneously with the Trust, Mr. Reugh executed his last will and testament

(Mr. Reugh's Will or the Will). Article III of the Will contained a pour-over clause

directing the distribution of Mr. Reugh's residuary estate to his Trust. Besides a short

list of tangible personal property, the bulk of Mr. Reugh's estate was to pass with his

residuary estate to his Trust.

Mr. Reugh died on March 22, 2015. At the time of his death, he had not

established his own charitable foundation or charitable donor-advised fund. On March 27,

the superior court admitted Mr. Reugh's Will to probate, declared the estate to be solvent,

appointed JoLynn Reugh-Kovalsky and Steve Gill as co-personal representatives of

Mr. Reugh's estate, granted nonintervention powers for administration of the estate, and

directed the issuance of letters testamentary. A tax return for the estate filed in 2016 by

Ms. Reugh-Kovalsky and Mr. Gill showed a charitable gift, after taxes, of approximately

$15,000,000 to INWCF. The return indicated Ms. Reugh-Kovalsky and Mr. Gill were also cotrustees of Mr. Reugh's Trust. Distributions in accordance with the directions of Mr. Reugh's Trust, including to Mr. Reugh's children and other members of the family, were made. *In re Estate of Reugh*, 10 Wn. App. 2d 20, 29, 447 P.3d 544 (2019) (*Reugh* I), *review denied*, 194 Wn.2d 1018, 455 P.3d 128 (2020).

In June 2015, an attorney representing the co-personal representatives and cotrustees sent INWCF a letter wherein they notified INWCF it was to receive a then-unascertained amount of money from Mr. Reugh's Trust. *Id*. In January 2016, an accountant for Mr. Reugh's estate sent INWCF a letter offering a contribution of $2,200,000. *Id*. at 30-31. The letter did not disclose the fact that INWCF could potentially receive a much higher sum through Mr. Reugh's Trust. *Id*. at 31. INWCF declined the offer. *Id*. In July 2016, an attorney representing James Reugh and Mark Reugh sent INWCF a letter wherein they alleged Mr. Culbertson had failed to effectuate their father's desire to establish a charitable foundation for his estate, and threatened litigation over the sum INWCF was to receive from his Trust. *Id*. at 31-34. The brothers offered to settle the dispute, but informed INWCF of their intent to refuse to distribute the residuary of Mr. Reugh's estate if no settlement was reached. *Id*. A subsequent letter to INWCF sent by counsel for all three Reugh children in January 2017 stated the children's intent to

4

pursue legal action to invalidate Mr. Reugh's Trust, and threatened that the children

would seek an award of attorney fees and costs from INWCF if INWCF contested the

action. *Id*. at 34.

On February 27, 2017, Mr. Reugh's three children filed a petition under

RCW 11.103.050[2] to contest the validity of Mr. Reugh's Trust (the Trust Contest

Petition).[3] The children initially advanced two arguments. First, they claimed Mr.

Reugh's Trust was invalid because Mr. Reugh was identified as both the settlor and the

trustee. Second, they argued the trust was invalid because Mr. Reugh had failed to fund

the Trust prior to his death. In this second argument they also contended article III of Mr.

Reugh's Will, which purported to activate his Trust, was invalid. The children asked the

trial court to declare that both article III of Mr. Reugh's Will and the entirety of his Trust

were invalid. Mr. Reugh's estate, through the co-personal representatives, Ms. Reugh-

Kovalsky and Mr. Gill, later answered the Trust Contest Petition wherein the estate

admitted to nearly every allegation of fact and law.

---

[2] RCW 11.103.050 concerns actions to contest the validity of a revocable living trust.

[3] On a stipulated motion of the parties, the trial court later consolidated the Trust Contest Petition with the probate action.

In November 2017, Innovia Foundation (Innovia)[4] filed a motion to remove

JoLynn Reugh-Kovalsky and Steve Gill as co-personal representatives of the estate,

and as cotrustees of Mr. Reugh's Trust, for breaching their fiduciary duties. *Reugh* I,

10 Wn. App. 2d at 36. The trial court granted this motion and appointed Northwest

Trustee and Management Services, LLC (Northwest Trustee) as the successor personal

representative of Mr. Reugh's estate and successor trustee of the Trust. *Id*. at 38-39.

The children, and separately Ms. Reugh-Kovalsky and Mr. Gill in their capacity as former

co-representatives and cotrustees, appealed the order to this court. *Id*. We affirmed the

trial court's order. *Id*. at 70-71.

As that appeal was pending, Northwest Trustee amended the answer of the estate

to the Trust Contest Petition to generally deny the legal and factual allegations made by

the children and to raise affirmative defenses. The children subsequently sought leave to

amend their Trust Contest Petition (the Amended Trust Contest Petition). In July 2018,

Innovia and Northwest Trustee consented to the filing of the Amended Trust Contest

Petition. In the Amended Trust Contest Petition, the children no longer sought to

invalidate article III of Mr. Reugh's Will. The children continued to claim Mr. Reugh's

Trust should be ruled invalid, arguing:

---

[4] INWCF changed its name to Innovia during the course of this case.

1.     Mr. Culbertson exercised undue influence on Mr. Reugh during the creation of the Trust, causing him to gift his residuary estate to Innovia as opposed to the children;

2.     Mr. Culbertson deceived Mr. Reugh into creating his Trust which, contrary to his intent, gifted his residuary estate to Innovia;

3.     Innovia conspired with Mr. Culbertson to defraud Mr. Reugh of his residuary estate;

4.     The trust documents executed by Mr. Reugh contained formal defects and lacked a sufficient level of clarity;

5.     The Trust merely named Innovia as a custodian of a gift, and Innovia's insistence it was the beneficiary of a gift created a conflict of interest that frustrated the purpose of the Trust;

6.     Mr. Reugh failed to fund his Trust during his lifetime; and

7.     The terms of the Trust were contrary to Mr. Reugh's intent.

The children also sought attorney fees and costs incurred during their defense of Mr. Reugh's estate from Innovia's "predatory" actions. CP at 161.

Northwest Trustee answered the Amended Trust Contest Petition on behalf of the estate, again generally denying the allegations made and raising affirmative defenses.

During the pendency of *Reugh* I, the children also filed nine motions[5] in various courts and engaged in extensive discovery. The children's actions caused Innovia and Northwest Trustee to file motions for an order striking briefing, to strike a jury demand, and to strike undisclosed expert witnesses.

In March 2019 both Innovia and Northwest Trustee moved for summary judgment. Northwest Trustee argued it was entitled to summary judgment on the merits. Innovia joined in the majority of Northwest Trustee's summary judgment argument, but also filed its own motion seeking dismissal on the basis that the children's cause of action was a de facto will contest, barred by a four-month statute of limitations. Northwest Trustee joined in Innovia's motion.

The trial court initially denied Innovia's motion and reserved ruling on the merits of Northwest Trustee's motion pending the outcome of the appeal in *Reugh* I. In June 2019, Innovia and Northwest Trustee moved for reconsideration of the summary judgment ruling as to the statute of limitations issue. The motions for reconsideration

---

[5] These included multiple motions to stay the litigation, a motion for recusal of the trial judge, a motion for reconsideration of the trial court's denial of the motion for recusal, a motion seeking to have the case preassigned to another judge, a motion to have this case consolidated with another case before another different judge, and a motion for an order directing the case to mediation.

were eventually scheduled for oral argument on September 30. One week before the

scheduled hearing, the children filed a notice of mediation under RCW 11.96A.300(1)(b).

The trial court focused the September 30 hearing on the motions for

reconsideration. The court did not make any decisions on either reconsideration or

mediation. It instead struck the pending trial date of October 21 and took the matter under

advisement.

On October 15, the children moved in the trial court to order mediation. They

ultimately noted their motion for an in-person hearing on November 15. On November 8,

Northwest Trustee filed a written objection to the children's motion to order mediation,

asking the court to rule on the motions for reconsideration prior to ordering any

mediation.

In written decision issued November 14, 2019, the trial court granted Innovia's

motion for reconsideration. The court determined the children's challenge to the Trust

was a de facto will contest and barred by the four-month statute of limitations. The court

then dismissed the children's Amended Trust Contest Petition as time barred.

Both Innovia and Northwest Trustee requested attorney fees and costs under

RCW 11.96A.150. Innovia sought $102,781.00 in attorney fees and $10,939.98 in costs.

Northwest Trustee sought $152,177.15 in attorney fees and $4,971.98 in costs. These

9

figures represented all work performed by the parties' attorneys on the case going back to 2016, minus appellate fees and costs and fees and costs incurred in the trial court on the motion to remove Ms. Reugh-Kovalsky and Mr. Gill as co-personal representatives of Mr. Reugh's estate and cotrustees of the Trust.

The trial court granted Innovia and Northwest Trustee's requests for attorney fees and costs. The court found the amounts sought to be reasonable under the circumstances, but reduced the amount personally liable by the children by one half in light of their familial relationship to Mr. Reugh. Ultimately, one half of the fees and costs awarded to Innovia and Northwest Trustee were to be paid jointly and severally by the children, the remainder was to be paid from Mr. Reugh's Trust.[6] In its order granting fees and costs, the court made the following findings of fact:

- The children "aggressively litigated" to invalidate Mr. Reugh's Trust. CP at 1522.

- The children filed motions in various courts with the intent of stalling a final decision in the Amended Trust Contest Petition during the pendency of *Reugh* I.

---

[6] Northwest Trustee had already recouped the entirety of its attorney fees from Mr. Reugh's Trust, and the children were to reimburse the Trust for half of those payments.

10

- The children's motion for mediation was presumably motivated by a desire to avoid the trial court's ruling on Innovia and Northwest Trustee's motions for reconsideration.

- The children displayed hostility and antagonism toward Innovia, as detailed in this court's opinion in *Reugh* I.

- The children's "efforts [were] to keep the remainder of [Mr. Reugh's] Trust . . . for themselves." *Id.* at 1523.

- The children's actions required Innovia and Northwest Trustee to file their own motions before the court.

The children, and former co-representatives and cotrustees, separately appealed the order granting reconsideration and dismissing the children's Amended Trust Contest Petition, and the subsequent order awarding attorney fees and costs to Innovia and Northwest Trustee. Those appeals have been consolidated for review.

ANALYSIS

*Right to mediation*

The children argue the mediation procedures set forth in the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, precluded the trial court from acting on the motions for reconsideration after they sought mediation under

11

RCW 11.96A.300. This is a legal matter we review de novo. *In re Estate of Rathbone*, 190 Wn.2d 332, 338, 412 P.3d 1283 (2018).

TEDRA is a statutory scheme that allows for disputes over trusts and estates to be resolved in a nonjudicial forum, such as mediation or arbitration. RCW 11.96A.010. The arbitration and mediation provisions of TEDRA do not strip courts of their "full power and authority" to administer and settle trusts and estate matters expeditiously in a manner the court deems "right and proper." RCW 11.96A.020(2). Furthermore, parties to a TEDRA proceeding may move for relief on procedural matters or for summary judgment "at any . . . time." RCW 11.96A.100(9). By affording a means of alternative dispute resolution, the legislature's intent was to maximize efficiency "by providing any party the right to proceed *first* with mediation and then arbitration *before* formal judicial procedures may be utilized." RCW 11.96A.270 (emphasis added).

A party wishing to invoke TEDRA's mediation procedure must follow the notice provisions set forth in RCW 11.96A.300. This statute contemplates different procedures according to whether or not a "hearing" has been set. The statute does not define what it means by "hearing." If no hearing has been set, a party objecting to mediation must serve and file a petition objecting to the mediation notice and note the petition for hearing no later than 20 days after filing. At the hearing, the court "shall order that mediation

12

proceed except for good cause shown." RCW 11.96A.300(2)(d). If a hearing has been set,

then there is no specific timeline for an objection to mediation. Instead, an objection may

be filed "by petition or orally at the hearing." RCW 11.96A.300(3). Again, the statute

provides that the court "shall order that mediation proceed except for good cause

shown. . . . If the court determines that the matter should not be subject to mediation,

the court shall dispose of the matter by: (a) [d]eciding the matter at the hearing, (b)

requiring arbitration, or (c) directing other judicial proceedings." *Id*.

Here, the children filed a notice of mediation under RCW 11.96A.300(1)(b); i.e.,

the provision applicable to cases where a hearing has been set.[7] This meant there were no

statutory deadlines for filing an objection. The court took up the issue of the mediation

request and the pending motions for reconsideration at an in-person hearing one week

after the filing of the notice of mediation. During the hearing, Innovia and Northwest

Trustee both urged the court to grant their motions for reconsideration. In so doing, they

implicitly objected to the court ordering mediation in lieu of reconsideration. After the

children subsequently filed a motion to order mediation and noted that motion for

hearing, Northwest Trustee filed a written objection to the motion to order mediation.

---

[7] In their mediation notice, the children indicated that a "trial/hearing . . . is set for October 21, 2019." CP at 1117 (some capitalization omitted).

The written objection was filed before the court's written decision on the matters taken under advisement.

The trial court's decision to rule on the reconsideration motions, rather than refer the matter for mediation, was fully consistent with TEDRA. The children's notice of mediation did not strip the trial court of authority to act. The trial court never ordered mediation as contemplated by RCW 11.96A.300(3). It retained full authority over the case, including the discretion to decide whether good cause warranted denying the request for mediation. The court justifiably decided to act on the motions for reconsideration, instead of ordering mediation, given the dispositive nature of the issues before it.

The children's position that the proceedings should have come to a halt once they filed the mediation notice is contrary to the purposes of TEDRA. TEDRA's stated goal is to allow for the efficient resolution of disputes prior to litigation. Here, the parties were engaged in extensive litigation prior to the children requesting mediation. It was only when the proceedings were at the cusp of conclusion (either by dispositive motion or trial) that the children invoked mediation. Allowing a party to use this type of procedural maneuver, after protracted litigation has already taken place, to disrupt and delay resolution of the case would flip the purposes of TEDRA on its head. The trial court's decision to act on the motions for reconsideration was proper.

14

*Statute of limitations*

The dispositive issue in this case is the statute of limitations. The children contend the trial court should not have applied the four-month statute of limitations applicable to will contests, RCW 11.24.010. Instead, they claim the court should have applied the two-year statute of limitations applicable to actions to invalidate revocable living trusts, RCW 11.103.050(1). Again our review is de novo. *Silver v. Rudeen Mgmt. Co.*, 197 Wn.2d 535, 542, 484 P.3d 1251 (2021).

While the children have styled their cause of action as a trust contest, this characterization is not controlling on our review. Our case law holds that any proceeding challenging the underlying validity of a will must be characterized as a will contest for purposes of the statute of limitations. *In re Estate of Finch*, 172 Wn. App. 156, 162-63, 294 P.3d 1 (2012); *In re Estates of Palmer*, 146 Wn. App. 132, 137-38, 189 P.3d 230 (2008). Contrary to the children's protestations, nothing in the wording of RCW 11.103.050(1) requires otherwise. A litigant cannot subvert the strict statute of limitations applicable to will contests by characterizing a will contest as a trust contest.

The thrust of the children's claims in support of their cause of action for invalidity in their Amended Trust Contest Petition is that Mr. Reugh's attorney, Thomas Culbertson,

improperly induced Mr. Reugh to leave the residuary of his estate to Innovia.[8]

As the children point out, Mr. Culbertson counseled Mr. Reugh on the trust documents and prepared them for Mr. Reugh's signature. However, the trust preparation did not happen in isolation. The Trust was part and parcel to Mr. Reugh's Will, which was also prepared by Mr. Culbertson and signed at the same time. The Will references the Trust and does little more than pour the majority of Mr. Reugh's estate assets into the Trust. If the children were to be correct as a factual matter that Mr. Culbertson exerted undue influence to convince Mr. Reugh to execute the Trust, he necessarily must have also done so with respect to the Will. To the extent the children challenge the validity of the Trust based on undue influence by Mr. Culbertson, they are necessarily also challenging the validity of the Will. Such a challenge to Mr. Reugh's Trust cannot be separated from a challenge to Mr. Reugh's Will. Under the terms of our case law, the statute of limitations applicable to will contests applies.

---

[8] Claims 1 (undue influence), 2 (pattern of deception and fraud), 3 (conspiracy to commit fraud), and 8 (trust contrary to intent) directly assert undue influence. Claims 4 (defects and lack of clarity) and 6 (Innovia as custodian, not owner or beneficiary) only make sense as part of the undue influence claims. The Trust is easy to read and understandable. Alleged defects in wording or with respect to Innovia's beneficiary status appear to turn on the allegation that Mr. Culbertson exerted undue influence in convincing Mr. Reugh to designate Innovia as a trust beneficiary, contrary to Mr. Reugh's intent. To the extent the children's allegation means something different, it is not explained or adequately developed for appellate review.

To a lesser extent, the children also claim the Trust was invalid because it was not funded or activated during Mr. Reugh's lifetime.[9] The children's position on this point has been fluid. In the factual background presented in their Amended Trust Contest Petition, the children assert that the Trust was not "operational" because it was never funded by $100 during Mr. Reugh's lifetime. CP at 150 (paragraph 2.62). On appeal, the children argue the Trust was created during Mr. Reugh's lifetime, but simply not funded. Appellants' Consol. Reply Br. at 4 ("[Mr. Reugh's] revocable living trust was created by its own language on January 4, 2011. It was simply never funded.") (citations omitted). As the children recognize, a pour-over provision in a will can fund a living trust. *See* RCW 11.12.250; RCW 11.98.008. This is true even if a trust is previously unfunded. RCW 11.12.250 ("The *existence*, size, or character of the corpus of the trust is immaterial to the validity of the gift.") (emphasis added). Thus, to the extent the Trust suffered from funding flaws during Mr. Reugh's lifetime, those flaws were remedied immediately upon Mr. Reugh's death, nearly two years before the children's initial filing seeking to invalidate the Trust. To the extent the children claim the Will's pour-over provision was insufficient to fund the Trust, this is again an attack on the Will, which is governed by the four-month statute of limitations.

---

[9] Claim 7.

17

The children did not initiate their cause of action until February 27, 2017. This was well outside the four-month statute of limitations triggered by the admission of Mr. Reugh's Will to probate on March 27, 2015. The trial court properly dismissed the petition based on the statute of limitations.

*Attorney fees and costs*

The children challenge the trial court's award of attorney fees and costs under TEDRA, which affords courts broad discretion in awarding costs, including attorney fees. RCW 11.96A.150. There are no segregation or prevailing party requirements. Instead, "[t]he court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable." RCW 11.96A.150(1). "[T]he court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." *Id*. We will not reverse a trial court's attorney fee award under TEDRA absent a manifest abuse of discretion. *In re Estate of Black*, 116 Wn. App. 476, 489, 66 P.3d 670 (2003).

The trial court here amply justified its fee and cost award. The court determined the children engaged in aggressive litigation designed to enrich themselves. While Innovia and Northwest Trustee could have moved to dismiss based on the statute of

limitations earlier in the proceedings, this circumstance does not render the trial court's decision unreasonable. The trial court cited numerous instances of the children engaging in litigation tactics to stall the proceedings and unnecessarily raise costs. The court did grant the children limited relief by ordering that one half of the attorney fee award come from the Trust. This was not an abuse of discretion.

The children's argument against fees and costs relies heavily on the case of *Scott Fetzer Company v. Weeks*, 114 Wn.2d 109, 786 P.2d 265 (1990). *Fetzer* addressed the propriety of a fee award under Washington's long-arm statute, RCW 4.28.185(5). The issue under the statute is whether a nonresident who has been haled into a Washington court to defend an action can be awarded attorney fees. *Fetzer* determined that the fee award should be narrowly limited to the fees incurred for a timely jurisdictional defense. 114 Wn.2d at 120. The narrow factors at play under the long-arm statute are much different than the broad equitable considerations under TEDRA. *Fetzer* is inapposite.

## APPELLATE ATTORNEY FEES AND COSTS

The parties all request fees and costs on appeal pursuant RCW 11.96A.150 and RAP 18.1. Consistent with our prior opinion, *Reugh* I, 10 Wn. App. 2d at 69-70, we grant the request for appellate attorney fees and costs made by Innovia and Northwest Trustee. The issues raised on appeal by the children are not meritorious and do not benefit the

19

estate. Payment of the costs and fees shall be made by Mr. Reugh's children jointly and severally. Payment shall not be taken from trust or estate assets.

CONCLUSION

We affirm the trial court and its award of attorney fees and costs. Innovia and Northwest Trustee are awarded reasonable attorney fees and costs on appeal pursuant to the terms of this opinion, subject to compliance with RAP 18.1(d).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.

20